UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDA-ORE PLANNING and DEVELOPMENT ASSOCIATION INC., et al,<br><br>Plaintiffs,<br><br>v.<br><br>SEVERINA "SAM" HAWS, as Administrator, et al<br><br>Defendants. | Case No. 1:14-CV-00206-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

      This case arises under 42 U.S.C. §§ 1983 and 1988. Plaintiff, Ida-Ore Planning and Development Association, Inc., dba Idaho Council of Governments ("Plaintiff") alleges that Defendants Severina "Sam" Haws, Administrator of the Idaho Commission on Aging, and Carey Spears, David Pankey, Lorraine Elfering, Coleen Erickson and Victor Watson, as Commissioners of the Idaho Commission on Aging (collectively referred to hereinafter as "Defendants"), failed to comply with the Older Americans Act, 42 U.S.C. § 3001 *et. seq.* (the "OAA") when distributing funds to the population of senior citizens Plaintiff formerly served as an Area Agency on Aging under the OOA. The Court has before it Defendants' motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

1

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument. For the reasons expressed, the Court will grant Defendants' motion to dismiss.

## BACKGROUND[1]

The OAA authorizes federal grants to fund state-created programs designed to help senior citizens in their daily needs. To receive such funds, a state must divide itself into one or more local planning and service areas ("PSAs"), and develop an intrastate funding formula for determining how funds are distributed among the PSAs. 42 U.S.C. § 3025(a)(1)(E). When its Complaint was filed, Plaintiff was one of six Area Agencies on Aging for the state of Idaho.[2] Under the OAA, Area Agencies on Aging receive funding that is passed through State Units on Aging. The Idaho Commission on Aging ("ICOA") is Idaho's State Unit on Aging, and Defendants are officers of ICOA.[3] I.C. § 67-5001.

---

[1] The following facts are undisputed.

[2] Plaintiff was the designated Area Agency on Aging for the PSA comprising ten southwest Idaho counties (including Ada, Adams, Boise, Canyon, Elmore, Gem, Owyhee, Payette, Valley, and Washington), from 1972 until shortly after Plaintiff's Complaint was filed. (Dkt. 1, ¶¶ 13-14.)

[3] Each of the Defendants is sued in their official capacity only.

Area Agencies on Aging serve as the public advocate for the development or enhancement of comprehensive and coordinated community-based systems of services in each community throughout a PSA. 45 CFR § 1321.61. Each Area Agency on Aging is charged with protecting and advocating on its own behalf for the interests of older citizens. *Id*. The six Idaho Area Agencies on Aging receive funds under a formula developed by the ICOA and approved by the Federal Administration on Aging in the United States Department of Health and Human Services.

In its Complaint, Plaintiff claimed that ICOA's formula for distribution of funds does not properly take into account statutory and regulatory criteria and, as such, underfunded services for the PSA that Plaintiff serves.[4] As a result of ICOA's allegedly non-compliant formula, Plaintiff claimed it had insufficient funds to meet service demands, and that its ability to lead the development or enhancement of comprehensive and coordinated community based systems was substantially diminished. Plaintiff requested declaratory relief finding ICOA's funding formula invalid for failing to take into account statutory and regulatory criteria, and sought injunctive relief prohibiting future allocation of funds under ICOA's current funding formula.

Since this case was filed on May 27, 2014, the ICOA issued a formal administrative proceeding to "de-designate" Plaintiff as an Area Agency on Aging in

---

[4] Specifically, Plaintiff claimed Defendants' formula fails to take into account the geographical distribution of older individuals in the State and fails to take into account the distribution of individuals aged 60 and older with physical and mental disabilities. (Dkt. 1, ¶ 29.)

3

Idaho. Plaintiff agreed to be de-designated as an Area Agency on Aging on July 25, 2014. ICOA issued its formal Order de-designating Plaintiff on July 31, 2014. As a result of its de-designation, Plaintiff will no longer receive funds from ICOA under the OOA.

Defendants filed the instant motion to dismiss on August 11, 2014. Defendants suggest Plaintiff's Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because Plaintiff's claims became moot when it was de-designated as an Idaho Area Agency on Aging. Alternatively, Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Because the Court finds it lacks subject matter jurisdiction due to Plaintiff's de-designation as an Area Agency on Aging, this case is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), and the Court need not address Defendants' alternative argument regarding Plaintiff's failure to state a claim. *Lance v. Coffman*, 549 U.S. 437 (2007) (federal courts must determine they have jurisdiction before proceeding to the merits) (*citing Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94-95 (1998)).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction. When a motion is made pursuant to Rule 12(b)(1), the plaintiff has the burden of proving that the court has subject matter jurisdiction. *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) *overruled on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010). For the court to exercise subject matter jurisdiction, a plaintiff must show that he or she has standing under Article III.

*Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit.") (citation omitted). A corollary to the case or controversy criteria is that:

> [A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed. If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot.

*Genesis Healthcare Corp. v. Symczyk*, U.S., 569 U.S. ---, 133 S.Ct. 1523 (2013) (internal citations and quotation marks omitted).

Article III sets forth the constitutional limitations on standing and requires a plaintiff to establish (1) injury in fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The injury in fact must be concrete and particularized and actual or imminent, rather than conjectural or hypothetical. *Id*. Further, the constitutional judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). "A federal court's jurisdiction therefore can be invoked only when the plaintiff has suffered some threatened or actual injury resulting from the putatively illegal action[.]" *Id*. (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973)). Otherwise, the exercise of federal jurisdiction would be gratuitous and thus inconsistent with the constitutional limitations. *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979).

A party who moves to dismiss for lack of subject matter jurisdiction may rely upon affidavits or other evidence properly before the Court. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). If affidavits are introduced, the party opposing the motion must present affidavits or other evidence necessary to satisfy its burden of establishing that the Court does have jurisdiction. *Id*. When deciding a motion pursuant to 12(b)(1), a court may look beyond the complaint without having to convert the motion into one for summary judgment, and it also need not presume the truthfulness of Plaintiff's allegations.[5] *Id.*; *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

## ANALYSIS

Plaintiff was officially de-designated as an Idaho Area Agency on Aging on July 31, 2014. As such, Plaintiff no longer receives funding under the ICOA funding formula Plaintiff brought this suit to challenge. Plaintiff suggests it still has standing as an entity with an interest in fair and equitable funding distribution under the OAA, and submits the declaration of its Vice Chairman, Judy Peavey Derr ("Ms. Derr"), in support. (Dkt. 12-2).

In her declaration, Ms. Derr suggests Plaintiff has independent standing because, even after its de-designation as an Area Agency on Aging, Plaintiff continues to monitor

---

[5] Here the Court has reviewed the declaration and exhibits filed with Defendants' Motion to Dismiss (Dkt. 9-2, 9-3, 9-4, and 9-5), as well as the declaration included with Plaintiff's Opposition to Defendants' Motion to Dismiss (Dkt. 12-2), in its consideration of Defendants' Motion to Dismiss pursuant to 12(b)(1).

and receive complaints from and about adults who are not being served by Adult Protection Services, in part because of ICOA's financial allocation choices; continues to coordinate with ten Southwest area County Commissions about the allocation of local government funding for senior citizen programs; continues to employ an Executive Director to provide consulting services for budgeting and program management for local senior entities; continues to assist citizen senior centers and rural medical service outposts; and has a contract opportunity with the U.S. Veterans Administration to provide case management services, but lacks funding to pursue the opportunity. (*Id*., ¶ 7a-e.)

The facts outlined in Ms. Derr's declaration are insufficient to confer standing. Although Plaintiff is concerned with funding to senior programs and consults with such entities, Plaintiff does not itself receive funding from ICOA, and would not directly benefit from any change to the ICOA funding formula. The frustration of a party's generalized interest in the proper application of the law is not by itself an injury in fact for purposes of standing. *Delta Commercial Fisheries Ass'n v. Gulf of Mexico Fishery Mgmt. Council*, 364 F.3d 269, 273 (5th Cir. 2004); *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975) (to establish standing, litigants must assert their own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties; *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (to establish standing a plaintiff must generally aver an injury peculiar to himself, or a particularized stake in the litigation, as distinguished from an undifferentiated grievance about the conduct of government.).

As Defendants note, each of the elements Ms. Derr relies upon to establish standing do not demonstrate harm personal to Plaintiff that would be redressed by a

7

favorable decision. (Dkt. 13, p. 4). Specifically, monitoring and receiving complaints from special needs adults does not give Plaintiff standing to challenge ICOA's funding formula; special needs adults who may themselves benefit from a change to the formula are those with a personal, redressable injury that could confer standing. Coordinating with county commissioners about the allocation of funding to senior programs is also insufficient to give Plaintiff standing. Instead, the local governments that may directly benefit from a change to the formula are those with a personal, redressable interest that could confer standing. Further, assisting senior centers or medical service outposts does not give Plaintiff standing, as the senior centers or rural medical service outposts that might benefit from a change to the formula are those with a personal, redressable interest. Finally, a contract opportunity with the Veterans Administration does not give Plaintiff standing to challenge the intrastate funding formula; the Veteran's Administration, which may benefit from a change to the formula, is the entity that may have a personal, redressable interest sufficient to confer standing.[6]

In short, even if ICOA's funding formula were to change, Plaintiff would not directly benefit from such change even though other entities and senior citizens may so benefit. As such, Plaintiff does not have sufficient personal stake in this case to pursue its claims, and the Court must dismiss for lack of subject matter jurisdiction. *Cetacean*

---

[6] This conclusion would likely be different if Plaintiff had not been de-designated as an Area Agency on Aging. As the court held in *Meek v. Martinez*, 724 F.Supp. 888, 901 (S.D. Fla. 1989), an area agency on aging is "a creature of the OAA and clearly its interest…has a 'plausible relationship to the policy underlying the [OAA].'"

*Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit. In that event, the suit should be dismissed under 12(b)(1)").

## ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Dkt. 9) is **GRANTED** and this action is dismissed in its entirety without prejudice.

DATED: February 3, 2015

Edward J. Lodge
United States District Judge